**RICHARD R. BEST**
**REGIONAL DIRECTOR**
**Sanjay Wadhwa**
**Thomas P. Smith Jr.**
**Lee A. Greenwood**
**John C. Lehmann**
**Attorneys for the Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**Brookfield Place**
**200 Vesey Street, Suite 400**
**New York, New York 10281-1022**
**(212) 336-1060 (Greenwood)**
**GreenwoodL@sec.gov**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　Plaintiff,<br><br>　　-against-<br><br>RONALD PHILLIPS,<br><br>　　　　　　　　　Defendant. | <u>COMPLAINT</u><br><br>20 Civ. 8017<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission (the "Commission"), for its Complaint against Defendant Ronald Phillips ("Phillips" or "Defendant"), alleges as follows:

### SUMMARY

1.　　This case involves Defendant's prearranged or "matched" trades in the stock of Royal Energy Resources, Inc. ("Royal Energy") in February and March of 2018.  In the days and weeks after Phillips resigned as an officer of Royal Energy, Phillips sold a portion of his Royal Energy stock holdings through his personal brokerage account by intentionally matching trades with an individual (the "Counterparty") who purported to work with a network of brokers that

had the ability to help "put stock away" (that is, to buy stock) in their customers' accounts. As he had agreed to do prior to placing the trades, Phillips then paid the Counterparty a kickback of 40% of the money Phillips received from his stock sales.

2.      Phillips was the president of Royal Energy, a company that indirectly owned coal mining assets, from October 13, 2015, until January 30, 2018. Beginning in or about September 2017, during recorded conversations with the Counterparty, Phillips discussed various potential stock manipulation schemes that involved matched trading in Royal Energy stock. Phillips stated during these conversations that he wanted to increase the price per share and trading volume of Royal Energy stock to appease current investors, to facilitate potential mergers with other companies, and to allow Phillips to sell his own stock because he needed money.

3.      Phillips and the Counterparty discussed Phillips selling Royal Energy stock in Phillips' personal brokerage account through matched trades with a purported network of brokers controlled by the Counterparty. Phillips and the Counterparty ultimately agreed that Phillips would place orders to sell his Royal Energy stock through his broker, at pre-determined prices and in pre-determined amounts, so that the Counterparty's purported network of brokers could then identify and transact with Phillips' orders in the market. Phillips agreed to pay the Counterparty a kickback of 40% of the money he netted on these trades.

4.      Between February 2 and March 8, 2018, Phillips executed five matched trades of 200 shares of Royal Energy Stock each, in prices ranging from $3.70 to $5.00, for total proceeds of $3,842.39. Afterwards, pursuant to their agreement, Phillips paid the Counterparty a 40% kickback of $1,537.

**VIOLATIONS**

5.  By virtue of the foregoing conduct and as alleged further herein, Phillips violated Section 17(a)(1) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(1)], and Sections 9(a)(1) and 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78i(a)(1) and 78j(b)] and Rules 10b-5(a) and 10b-5(c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

6.  Unless the Defendant is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of a similar type and object.

**NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT**

7.  The Commission brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)], and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

8.  The Commission seeks a final judgment: (a) permanently enjoining Defendant from violating the federal securities laws and rules this Complaint alleges he has violated; (b) ordering Defendant to disgorge all ill-gotten gains he received as a result of the violations alleged here and to pay prejudgment interest thereon; (c) ordering Defendant to pay a civil money penalty pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3); (d) permanently prohibiting Defendant from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; and (e) ordering any other and further relief the Court may deem just and proper.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].

10. Defendant, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

11. Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].  Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District, including Defendant's offers and sales of Royal Energy stock through his broker-dealer in Manhattan, New York.

**DEFENDANT**

12. **Phillips**, age 54, resides in Weston, Connecticut.  From October 13, 2015, until January 30, 2018, Phillips served as president of Royal Energy.  Phillips holds a law degree from Stanford Law School and is a member of the New York bar.

**FACTS**

**I.    BACKGROUND**

    **A.    Royal Energy**

13. Royal Energy is a Delaware corporation formed in 1999 with its headquarters in Charleston, South Carolina.

14. Royal Energy has purported to focus on the acquisition of natural resources assets, including coal mining operations.

15. At all relevant times, Royal Energy's common stock has been registered with the Commission pursuant to Exchange Act Section 12(g) [15 U.S.C. § 78l(g)].

16. At all relevant times, prices of Royal Energy common stock have been quoted by OTCQB, an interdealer quotation service operated by OTC Markets Group, Inc.

17. Between September 1, 2017, and March 8, 2018 (the "Relevant Period"), Royal Energy's common stock was thinly traded. An average of approximately 55 shares of Royal Energy stock traded per trading day during the Relevant Period. On 106 of the 129 trading days during the Relevant Period (82%), zero shares traded.

18. During the Relevant Period, the price per share of Royal Energy's common stock ranged between $1.75 and $5.00 per share.

**B.  Phillips**

19. Phillips served as president of Royal Energy from October 13, 2015, until he resigned on January 30, 2018.

20. During at least the Relevant Period, Phillips also worked at the Manhattan, New York, offices of a private equity firm focused on energy investments.

21. After Phillips resigned from Royal Energy, he continued to work for the company as a consultant.

22. Periodically, Phillips received shares of Royal Energy common stock as compensation for his work for Royal Energy.

23. On March 1, 2016, Royal Energy issued 4,878 shares of Royal Energy common stock to Phillips as a bonus (the "March 2016 Shares").

24. Phillips deposited the March 2016 Shares into his personal brokerage account with a broker-dealer in Manhattan, New York ("Broker-Dealer 1").

25. In May 2016, Phillips sold 2,030 of the March 2016 Shares in his account at Broker-Dealer 1, at prices ranging between $8.50 and $11.25 per share, for total net proceeds of approximately $19,400.

26. Phillips did not sell any of the 2,848 remaining March 2016 Shares, which remained in his account at Broker-Dealer 1, until February 2, 2018.

## II.  PHILLIPS AND THE COUNTERPARTY DISCUSS MATCHED TRADING IN ROYAL ENERGY STOCK

27. In or about September 2017, Phillips began speaking with the Counterparty about the possibility of executing matched trades in Royal Energy stock.

28. On September 20, 2017, during a recorded telephone call, Phillips told the Counterparty that Royal Energy common stock was "trading by appointment" and was "very tightly held by a group of investors in Texas." Phillips stated during this call that these investors were getting "impatient and unhappy," and that he and others at Royal Energy could keep them "out of the market," but that the company needed "sustained volume" both to help potentially uplist the stock to NASDAQ and to keep these investors "happy." Phillips also stated: "I need money."

29. During this call, Phillips further stated that "we don't need this to be a twenty dollar stock . . . but we can't have it be a one dollar stock either, it has to be in the range where we sold stock to these Texans to keep them happy." To that end, Phillips stated that, "if [these investors] see it trading, and it's actually trading, and there are prints, and we're putting out news, and it's at six bucks or five bucks or seven bucks or you know four fifty . . . they'll be totally happy." Phillips stated that, if these investors "see it trading a hundred shares once a week and . . . with giant moves on no volume, they're getting restless."

30. Prior to this recorded call on September 20, 2017, Royal Energy stock had last traded on September 14, 2017, at a price of $2.80 per share.

31. Phillips also told the Counterparty during this recorded call on September 20, 2017, that, "I'm probably going to become a consultant to Royal rather than an officer or director, and then I'll be able to . . . do some private transactions in the stock," which Phillips stated would allow him to "move stock in a flexible way."

32. The Counterparty told Phillips during this recorded call that "I have brokers that have huge discretionary accounts that would put the stock away," and that "basically, we're doin' match trades." Phillips responded: "Right."

33. Phillips stated during this recorded call that, in order for him to match trades with the Counterparty's brokers in the open market, Phillips' sell orders needed to be the "low offer" and, in order for the Counterparty to get paid, "I need to be the one selling the stock."

34. During this recorded call, after the Counterparty explained that the fee for these matched trades would be a 40% kickback, Phillips responded that this is "totally fine for a five dollar stock . . . it's a problem for you know a three dollar stock" because the company "only has so much paper available." Phillips then stated that "we can start with a little bit of three dollar paper but . . . the stock in the market needs to be trading at five not three." In sum, Phillips said that "I wanna sell a bunch of five dollar stock and pay you two. . . . and then go up from there."

35. During a second recorded telephone call on September 20, 2017, Phillips and the Counterparty continued to discuss the mechanics of potential matched trading in Royal Energy stock. Specifically, Phillips agreed to pay the Counterparty's fee "once they got going"—that is, a 40% kickback in exchange for the Counterparty's agreement "to move my paper for me."

7

Phillips stated that his only brokerage account that was "useful" for the matched trading scheme was at Broker-Dealer 1.

36.     During the second recorded call on September 20, 2017, Phillips and the Counterparty discussed Phillips' plan to formally resign as president of Royal Energy but to continue on as a "consultant" before beginning to execute matched trades. Phillips explained that "we just don't know how to do this without me resigning."

37.     After September 2017, and over the course of the next four months, Phillips and the Counterparty continued to discuss the timing of when, and the mechanics of how, they would execute matched trades in Royal Energy stock.

38.     At various times during the Relevant Period, Phillips stated to the Counterparty that he planned to sell enough Royal Energy stock through matched trades with the Counterparty's purported network of brokers in order to generate between $3 million and $5 million in proceeds. In order to do so, Phillips explained to the Counterparty his plans to acquire the necessary shares from other company insiders and affiliates.

39.     On October 26, 2017, during a recorded conversation, Phillips stated to the Counterparty that "we can start at four dollars and go to eight over time" as part of their discussion about how to "walk up" the Royal Energy stock price by executing matched trades.

40.     During this recorded conversation, in discussing their agreement to execute "perfectly matched trade[s]," the Counterparty told Phillips "clearly nobody can know brokers are getting paid on this." Phillips responded: "Yeah of course, of course."

41.     Phillips and the Counterparty also discussed during this recorded conversation the fact that the Counterparty would be splitting the 40% kickback Phillips agreed to pay between

the Counterparty and the purported network of brokers that would help to "put the stock away" that Phillips planned to sell.

42. In explaining why he needed to begin their matched trading scheme soon, Phillips told the Counterparty during the recorded conversation on October 26, 2017, that "I am very motivated to make some money, like I gotta make some money like soon" and "I need to put some money in my [Broker-Dealer 1] account."

### III. PHILLIPS AND THE COUNTERPARTY PREPARE TO EXECUTE MATCHED TRADES IN ROYAL ENERGY STOCK

43. During a recorded telephone call on January 16, 2018, Phillips told the Counterparty that Phillips wanted to "start this thing at, you know, last couple of days of January, beginning of February." Phillips also stated that these matched trades would be "putting money in my pocket which is, you know, a good thing in itself."

44. During a recorded telephone call on January 25, 2018, Phillips told the Counterparty that Phillips hoped to begin executing "small" or "test" matched trades with the Counterparty beginning in the first week of February 2018. Phillips also described to the Counterparty his interest in increasing the price of Royal Energy stock through their matched trading scheme, stating: "Whether we sell right here or we sell at five . . . I don't know, maybe we'll start at four and walk it up slowly. We'll have to work with you on that. But wherever it is, it is, I mean we want to get it started, get some action going." Phillips further stated: "I have to sign my agreement, my resignation agreement, hopefully tomorrow and then . . . I already have some shares in my account but I'll get more and we'll get going."

45. On January 30, 2018, Phillips resigned as president of Royal Energy but, just like he had told the Counterparty, he continued to work for Royal Energy as a "consultant."

46. During a recorded telephone call on January 31, 2018, Phillips told the Counterparty: "I'm ready to test."

47. In a second recorded telephone call that day, Phillips and the Counterparty agreed to execute a matched trade whereby Phillips would sell 200 shares of his Royal Energy stock to the Counterparty's purported network of brokers at a price of $3.70 per share. Phillips stated that he selected this price because it was just below the then-existing quoted ask price, or the lowest price at which a seller was willing to sell Royal Energy stock.

48. In a third recorded telephone call that day, Phillips told the Counterparty that Phillips was not able to place the order because Broker-Dealer 1 needed to see a copy of his resignation letter from Royal Energy, which Phillips stated he would send to Broker-Dealer 1 as soon as possible.

49. Broker-Dealer 1 required Phillips to sign a letter that contained a series of representations about, among other things, Phillips' expected sales of Royal Energy stock, before Phillips was permitted to sell the remaining March 2016 Shares in his account. Phillips signed such a representation letter on or about February 1, 2018 (the "Letter").

50. Phillips falsely represented in the Letter that he "has not made, and will not make, any payment in connection with the execution of the above order to any persons other than [Broker-Dealer 1]."

51. Phillips also falsely represented in the Letter that he "has not solicited or arranged for the solicitation of orders to buy in anticipation of or in connection with this transaction."

52. In reality, Phillips had agreed to pay the Counterparty a 40% kickback from the proceeds of Phillips' sales of Royal Energy stock through matched trades.

**IV.     PHILLIPS INTENTIONALLY EXECUTES MATCHED TRADES IN FEBRUARY AND MARCH 2018**

53.     Between February 2 and March 8, 2018, Phillips executed five separate matched trades with the Counterparty, each of which involved 200 shares of Royal Energy stock.

54.     Phillips used his brokerage account at Broker-Dealer 1 to execute each of these matched trades. Specifically, Phillips entered each of his orders to sell Royal Energy stock by calling or otherwise contacting his broker at the Manhattan, New York, offices of Broker-Dealer 1, at which point the broker then entered Phillips' order to sell Royal Energy stock pursuant to Phillips' instructions.

55.     The table below lists the dates of each matched trade, the number of shares per trade, the price per share at which each trade was executed, and the proceeds that Phillips received from each of trade less fees and expenses.

| Trade Date | Number of Shares | Price Per Share | Net Proceeds |
| --- | --- | --- | --- |
| February 2, 2018 | 200 | $4.00 | $758.48 |
| February 15, 2018 | 200 | $3.80 | $718.48 |
| February 16, 2018 | 200 | $3.75 | $708.48 |
| March 7, 2018 | 200 | $3.70 | $698.48 |
| Match 8, 2018 | 200 | $5.00 | $958.47 |
| | | | **$3,842.39** |

56.     In advance of placing the first matched trade on February 2, 2018, during a recorded telephone call with the Counterparty that began at or about 1:05 p.m. Eastern Time ("ET"), Phillips stated: "I'm ready to go."

57.     Phillips explained to the Counterparty during the call that there were "only 2,800" shares, that is, the remaining March 2016 Shares, in his brokerage account at Broker-Dealer 1.

58.     Phillips stated during the call that he was "hoping we could do 200 today to get things started." Phillips then suggested that he place an order to sell 200 shares of Royal Energy

11

stock at "four bucks."  The Counterparty said: "Sounds good, this way we'll walk it up a little," to which Phillips responded:  "Yeah."

59. On February 2, 2018, at or about 1:14 p.m. ET, the Counterparty entered a limit order to buy 200 shares of Royal Energy stock at a price of $4.00 per share.

60. On February 2, 2018, at or about 2:21 p.m. ET, Phillips entered a limit order to sell 200 shares of Royal Energy stock at a price of $4.00 per share.

61. The orders Phillips and the Counterparty entered on February 2, 2018, matched—that is, Phillips sold 200 shares of Royal Energy stock to the Counterparty at a price of $4.00 per share.

62. Phillips received net proceeds of $758.48 from his matched trade with the Counterparty on February 2, 2018.

63. After the trade, on February 2, 2018, Phillips and the Counterparty spoke during an additional recorded call and discussed whether Phillips' order to sell and the Counterparty's order to buy had matched.  During the call, Phillips asked the Counterparty if the Counterparty would like to execute an additional matched trade that day, but the Counterparty stated that the Counterparty needed to "hold off for right now."

64. A total of 511 Royal Energy shares traded on February 2, 2018.  Phillips' matched trade with the Counterparty represented 39% of the day's trading volume.

65. On February 14, 2018, during a recorded telephone call with the Counterparty, Phillips asked the Counterparty "do you want to do somethin' today?"  The Counterparty responded that the Counterparty was not able to do so that day, but would be in a position to execute an additional matched trade the next day.

66. On February 15, 2018, near the end of a recorded telephone call with the Counterparty that began at or about 11:08 a.m. ET, Phillips stated: "Why don't I put in . . . two hundred at three-eighty."

67. On February 15, 2018, during a recorded telephone call with the Counterparty that began at or about 11:33 a.m. ET, Phillips told the Counterparty that he "can't get [Broker-Dealer 1] to pick up right now so I'll call you back when I have them."

68. On February 15, 2018, at or about 11:42 a.m. ET, Phillips entered a limit order to sell 200 shares of Royal Energy stock at a price of $3.80 per share.

69. On February 15, 2018, during a recorded telephone call with the Counterparty that began at or about 11:55 a.m. ET, Phillips stated: "All set. Offered at three-eighty." The Counterparty responded "Okay, I'll go in . . . two hundred at three-eighty," to which Phillips replied: "Two hundred at three-eighty, yep."

70. On February 15, 2018, at or about 11:57 a.m. ET, the Counterparty entered a limit order to buy 200 shares of Royal Energy stock at a price of $3.80 per share.

71. The orders Phillips and the Counterparty entered on February 15, 2018, matched—that is, Phillips sold 200 shares of Royal Energy stock to the Counterparty at a price of $3.80 per share.

72. Phillips received net proceeds of $718.48 from his matched trade with the Counterparty on February 15, 2018.

73. A total of 200 Royal Energy shares traded on February 15, 2018. Phillips' matched trade with the Counterparty represented 100% of the day's trading volume.

74. The next day, February 16, 2018, during a recorded telephone call with the Counterparty that began at or about 12:22 p.m. ET, Phillips and the Counterparty agreed to

execute an additional matched trade for 200 shares of Royal Energy stock at a price of $3.75 per share.  Phillips told the Counterparty that Phillips would call back after Phillips had placed his order.

75. Phillips stated during the call that he was currently skiing in Colorado.

76. During a second recorded telephone call with the Counterparty on February 16, 2018, which began at or about 12:29 p.m. ET, Phillips stated:  "All set, two hundred at three seventy-five."

77. On February 16, 2018, at or about 12:30 p.m. ET, Phillips entered a limit order to sell 200 shares of Royal Energy stock at a price of $3.75 per share.

78. On February 16, 2018, at or about 12:37 p.m. ET, the Counterparty entered a limit order to buy 200 shares of Royal Energy stock at a price of $3.75 per share.

79. The orders Phillips and the Counterparty entered on February 16, 2018, matched—that is, Phillips sold 200 shares of Royal Energy stock to the Counterparty at a price of $3.75 per share.

80. Phillips received net proceeds of $708.48 from his matched trade with the Counterparty on February 16, 2018.

81. A total of 275 Royal Energy shares traded on February 16, 2018.  Phillips' matched trade with the Counterparty represented 73% of the day's trading volume.

82. On March 5, 2018, during a recorded telephone call with the Counterparty, Phillips and the Counterparty agreed to begin executing additional 200-share matched trades in Royal Energy stock on March 7, 2018.

83. Phillips stated during the call that he was currently in Toronto, Canada, for a "mining conference."

84. On March 7, 2018, during a recorded telephone call with the Counterparty that began at or about 12:16 p.m. ET, Phillips asked the Counterparty whether the Counterparty was "ready to go" and indicated that he planned to call Broker-Dealer 1 in order to place an order to sell 200 shares of Royal Energy stock at a price of $3.70 per share.

85. On March 7, 2018, at or about 12:21 p.m. ET, Phillips entered a limit order to sell 200 shares of Royal Energy stock at a price of $3.70 per share.

86. On March 7, 2018, at or about 12:22 p.m. ET, the Counterparty entered a limit order to buy 200 shares of Royal Energy stock at a price of $3.70 per share.

87. The orders Phillips and the Counterparty entered on March 7, 2018, matched— that is, Phillips sold 200 shares of Royal Energy stock to the Counterparty at a price of $3.70 per share.

88. Phillips received net proceeds of $698.48 from his matched trade with the Counterparty on March 7, 2018.

89. After the trade, on March 7, 2018, Phillips and the Counterparty discussed the fact that their orders had matched during a recorded telephone call.

90. A total of 200 Royal Energy shares traded on March 7, 2018. Phillips' matched trade with the Counterparty represented 100% of the day's trading volume.

91. On March 8, 2018, during a recorded telephone call that began at or about 12:14 p.m. ET, Phillips told the Counterparty that "we've got a better price, can we do it at five dollars today?" Though Phillips asked the Counterparty "if we could do a few more shares," they ultimately agreed during the call to another 200-share matched trade at a price of $5.00 per share that day.

92. On March 8, 2018, at or about 12:20 p.m. ET, Phillips entered a limit order to sell 200 shares of Royal Energy stock at a price of $5.00 per share.

93. During a second recorded telephone call on March 8, 2018, which began at or about 12:20 p.m. ET, Phillips advised the Counterparty that Phillips had placed the agreed-upon sell order.

94. On March 8, 2018, at or about 12:21 p.m. ET, the Counterparty entered a limit order to buy 200 shares of Royal Energy stock at a price of $5.00 per share.

95. The orders Phillips and the Counterparty entered on March 8, 2018, matched— that is, Phillips sold 200 shares of Royal Energy stock to the Counterparty at a price of $5.00 per share.

96. Phillips received net proceeds of $958.47 from his matched trade with the Counterparty on March 8, 2018.

97. A total of 200 Royal Energy shares traded on March 8, 2018. Phillips' matched trade with the Counterparty represented 100% of the day's trading volume.

98. On March 9, 2018, the Counterparty emailed Phillips, asked Phillips to "complete the cycle to date," and provided Phillips with wire instructions for a bank account. Phillips responded later that day: "[W]ill do."

99. On March 12, 2018, Phillips emailed the Counterparty and advised the Counterparty that 40% of the net proceeds from their matched trades was approximately $1,537 and that Phillips "[w]ill get [the] wire out."

100. On March 15, 2018, Phillips wired $1,537 from his brokerage account at Broker-Dealer 1 to the bank account provided by the Counterparty by email on March 9, 2018.

**FIRST CLAIM FOR RELIEF**
**Violations of Securities Act Section 17(a)(1)**

101. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 100.

102. Defendant, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, knowingly or recklessly has employed one or more devices, schemes, or artifices to defraud.

103. By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Securities Act Section 17(a)(1) [15 U.S.C. § 77q(a)](1)].

**SECOND CLAIM FOR RELIEF**
**Violations of Exchange Act Section 10(b) and Rules 10b-5(a) and (c) Thereunder**

104. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 100.

105. Defendant, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (a) employed one or more devices, schemes, or artifices to defraud, and/or (b) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

106. By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

## THIRD CLAIM FOR RELIEF
### Violations of Exchange Act Section 9(a)(1)

107. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 100.

108. Defendant, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, or for any member of a national securities exchange, for the purpose of creating a false or misleading appearance of active trading in any security other than government security, or a false or misleading appearance with respect to the market for any such security, (a) effected any transaction in such security which involved no change in beneficial ownership thereof; (b) entered an order or orders for the purchase of such security with the knowledge that an order or orders of substantially the same size, at substantially the same time, and at substantially the same price, for the sale of such security, has been or will be entered by or for the same or different parties; or (c) entered an order or orders for the sale of such security with the knowledge that an order or orders of substantially the same size, at substantially the same time, and at substantially the same price, for the purchase of such security, has been or will be entered by or for the same or different parties.

109. By reason of the foregoing, Defendant directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Exchange Act Section 9(a)(1) [15 U.S.C. § 78i(a)(1)].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court issue a Final Judgment:

**I.**

Permanently enjoining Phillips and any of his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Section 17(a)(1) [15 U.S.C. § 77q(a)(1)], and Exchange Act Sections 9(a)(1) and 10(b) [15 U.S.C. §§ 78i(a)(1) and 78j(b)], and Rules 10b-5(a) and (c) [17 C.F.R. §§ 240.10b-5(a) and (c)] thereunder.

**II.**

Ordering Phillips to disgorge all ill-gotten gains he received directly or indirectly, with prejudgment interest thereon, as a result of the alleged violations;

**III.**

Ordering Phillips to pay civil monetary penalties under Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)].

**IV.**

Permanently prohibiting Phillips from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; and

**V.**

Granting any other and further relief as this Court may deem just and proper.

Dated: New York, New York
September 28, 2020

/s/ Richard R. Best
RICHARD R. BEST
REGIONAL DIRECTOR
Sanjay Wadhwa
Thomas P. Smith, Jr.
Lee A. Greenwood
John C. Lehmann
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-1060 (Greenwood)
GreenwoodL@sec.gov